ZELTA J. BOMBARGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62530. Filed November 28, 1958.

*Frank W. Phillips, Esq.*, for the petitioner.
*Bart A. Brown, Jr., Esq.*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency in income tax of $120 for the year 1954.

The only question for decision is whether petitioner properly claimed Winnie Stewart as a dependent.

#### FINDINGS OF FACT.

Petitioner is an individual residing in Marion, Ohio. Her income tax return for 1954 was filed with the district director of internal revenue at Columbus, Ohio.

During 1954 petitioner was employed as a salesclerk. She worked 5 days a week from 9 a. m. to 5 : 30 p. m. and 1 day a week for 2½ hours. Her gross earnings in 1954 were $2,365.48. Withholding taxes in the amount of $191.04 and social security payments in the

---

amount of $47.31 were deducted from her gross earnings by her employer.

About 12 years prior to the trial of this case petitioner, who was married, but who at that time was separated from her husband, went to live with Winnie Stewart and her husband in their home. Winnie Stewart's husband died prior to 1954. Petitioner had a son who, at the time of trial, was 12 years old. Petitioner and her son have lived in Winnie Stewart's home ever since. Petitioner and the Stewarts are not related.

During 1954 and the years just prior thereto Winnie and petitioner were "like mother and daughter." Winnie had no cash income in 1954. She had a savings account from which she made expenditures detailed hereinafter. Petitioner and Winnie had no express agreement about their living in the same household. During the taxable year the house in which they lived belonged to Winnie. It was mortgaged. It contained 7 rooms including 3 bedrooms. All rooms except petitioner's bedroom were furnished by Winnie who prepared the majority of the household meals, did most of the household ironing and dishwashing, and took care of petitioner's son when he was not in school. The fair rental value of the house during 1954 was $50 per month. Child care in Marion, Ohio, costs from 50 to 75 cents an hour.

From her salary petitioner made the following additional expenditures during the year 1954:

| Item | Amount |
|------|--------|
| Payments on the purchase of an automobile belonging to Winnie | $283.00 |
| Payments on the purchase of a refrigerator | 60.00 |
| Real estate taxes on the residence at 556 Park Street, Marion, Ohio | 78.00 |
| Mortgage payments on the same residence: | |
| Principal _____ $199.00 | |
| Interest _____ 72.98 | |
| | 271.98 |

The remainder of petitioner's gross earnings was spent for food and other expenses of maintenance of the household occupied by petitioner, petitioner's son, and Winnie.

Winnie had a personal savings account on January 1, 1954. During the year 1954 she made the following expenditures from this savings account:

| Item | Amount |
|------|--------|
| Automobile insurance | $120.00 |
| Sick and accident insurance (for herself) | 28.00 |
| Life insurance | 25.80 |
| Small set of stainless steel kitchenware | 75.00 |
| Bed and mattress (for general use in the home) | 25.00 |
| Automobile repairs | 35.00 |
| Personal expenses (clothing, medicine, etc.) | 30.70 |
| Attorney fees on the estate of Winnie's husband | 61.50 |
| Court costs on the estate of Winnie's husband | 20.00 |

Winnie was the owner of an automobile which was used by both petitioner and herself during the year 1954.

On her 1954 income tax return, petitioner claimed Winnie as a dependency exemption. The Commissioner determined that the claimed dependency exemption is not allowable under sections 151 and 152 of the Internal Revenue Code of 1954.

### OPINION.

Petitioner has requested us to find as a fact that Winnie "resided in the home of Petitioner the entire calendar year 1954." Starting from there, the case is argued as if the only question were whether petitioner contributed more than one-half of Winnie's support during the year.

We think the question is broader than petitioner argues. Since we do not think that Winnie is encompassed in the statutory definition of a dependent it is unnecessary to indulge in mathematical computations regarding the amount of support, to decide the case.

Petitioner and Winnie are not related, and to be a dependent, Winnie must, in the words of section 152 (a) (9), I. R. C. 1954, be "[a]n individual * * * who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household." As we interpret the facts it was not Winnie who had as her principal place of abode the home of the taxpayer (petitioner), but it was the other way around. The house belonged to Winnie. It was almost entirely furnished by her. The Stewarts received petitioner and her son into *their* home and petitioner and her son continued to live there after Stewart's death. True, household chores were shared, with Winnie doing the major share. So were the household expenses, with petitioner, the only wage earner, contributing most of the cash expenditures. But we do not think this arrangement is enough on which to base a finding that Winnie's principal place of abode was the home of petitioner. It seems more in accord with reality to say petitioner and her son had their principal place of abode in Winnie's home.

With respect to the arrangement under which the three lived, petitioner testified as follows:

Q. All right. Now, did you and Winnie Stewart ever make any agreement that you would live with her, and in her house, and she would help take care of the boy, and you would help do the housework, and you would bring home the bacon, et cetera?

A. No, there wasn't any agreement at all. It is just that I went to her, was working and contributed my salary to the support of the three of us. No agreement at all. I don't have to stay there, and she doesn't—

Q. Would you say that there are other considerations for your staying there, besides financial?

A. Well, we have just been like mother and daughter. We have the same interests socially, and it just seems like home; that is all.

Q. Is it your home?

A. Yes. That is what they told me when I first went to stay there, it was my home as much as theirs.

And Winnie testified as follows:

THE COURT: I would like to ask you, just in common ordinary language, do you consider that Mrs. Bombarger was supporting you during the year 1954, or were you supporting her?

THE WITNESS: Well, I don't know how to answer that.

THE COURT: Well, it sounds to me as if it was sort of a mutual proposition.

THE WITNESS: It was.

THE COURT: She lived with you, and you owned the house and she contributed to the upkeep of the house, and paid some—

THE WITNESS: That is true. It is her home and, well, we just feel that it is a mutual affair. It belongs to both of us.

THE COURT: You have no feelings as to whether you contributed more than half of her support, or whether she contributed more than half of yours?

THE WITNESS: No, I never figured it from that standpoint at all.

THE COURT: There was no arrangement about her paying you rent?

THE WITNESS: Absolutely none.

This situation is not one of dependency within the intent of the statute. While the owner of the home is in a sense dependent upon the financial contribution of the petitioner, the latter is in turn dependent upon the owner for a home and child care. These parties are mutually dependent upon one another. Each contributes something the other needs and each receives a benefit from a mutually satisfactory arrangement. It is not necessary to attempt to weigh the comparative worth of the contributions and say which is the greater. Nor is it necessary or desirable that we attempt to define more exactly the scope of the term "dependent" in relation to this and similar situations. In the performance of the function of pricking out the line between cases within or without the exemption we determine merely that the homeowner, Winnie, was not a dependent of this petitioner for purposes of sections 151 and 152, I. R. C. 1954.

See *W. E. Massey*, 14 B. T. A. 407, affd. (C. A. 6) 51 F. 2d 76, where we said in denying dependency—

Here we have what seems to amount to little more than an arrangement of convenience, apparently helpful and beneficial to both parties, in which the sister superintends the operation of her brother's household and, in return, is provided with a home in which she lives and also with other support in the way of having her expenses paid. * * *

*Decision will be entered for the respondent.*